UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:12-cr-00027-JAW-02 |
| | ) | |
| MARSHALL SWAN | ) | |

**ORDER ON MOTION TO CLARIFY *KEPREOS* ORDER AND ALLOW RELEASE OF JUROR INFORMATION**

In anticipation of his trial on similar charges, Marshall Swan seeks leave of Court to interview jurors from his wife Carole Swan's three-week trial on multiple allegations of tax, workers' compensation, and federal program fraud. Because Mr. Swan has failed to alert the Court to an extraordinary situation which under *United States v. Kepreos*, 759 F.2d 961 (1st Cir. 1985) could justify post-verdict contact with jurors, the Court denies his motion.

I.  STATEMENT OF FACTS

On February 29, 2012, a federal grand jury indicted Marshall and Carole Swan on multiple allegations of fraud. *Indictment* (ECF No. 1). The indictment charged Ms. Swan with tax fraud, workers' compensation fraud, fraud on a program receiving federal funds, and Hobbs Act violations. *Id.* at 1-6. It charged Mr. Swan with tax fraud and aiding and abetting Ms. Swan in federal program fraud. *Id.* at 2, 7. On February 26, 2013, the Court affirmed the Magistrate Judge's recommended decision and ordered the Hobbs Act counts against Ms. Swan severed from the remaining counts. *Order Overruling the Defendants' and the Government's*

*Objections to the Magistrate Judge's Order Granting in Part and Denying in Part Carole Swan's Motion to Sever and Marshall Swan's Motion for Relief from Prejudicial Joinder* (ECF No. 105).

On March 28, 2013, a federal grand jury issued a superseding indictment containing the same federal charges against the Swans as the original indictment. *Superseding Indictment* (ECF No. 112). As of March 5, 2013, the Swans' joint trials on Counts Four through Fourteen, the non-Hobbs Act charges, were scheduled to begin on July 8, 2013. *Notice of Hearing* (ECF No. 110). Yet, on July 2, 2013, Ms. Swan informed the Court that she intended to present a domestic violence defense implicating Mr. Swan as her abuser. *See Minute Entry* (ECF No. 136). The Court severed the Swans' trials based on prejudicial joinder. *Order on Motion for Relief from Prejudicial Joinder and Motion to Continue* (ECF No. 144). Ms. Swan proceeded to trial on July 8, 2013. *Minute Entry* (ECF No. 146).

Ms. Swan's three-week jury trial ended on July 26, 2013. *Minute Entry* (ECF No. 164). The jury found Ms. Swan guilty on all tax fraud charges, not guilty on two of the four workers' compensation fraud charges, guilty of the remaining two workers' compensation fraud counts, and not guilty on the federal program charge. *Jury Verdict* (ECF No. 167). At the end of trial, the Court issued an Order prohibiting post-verdict contact with jurors pursuant to the First Circuit's decision in *Kepreos*. *Kepreos Order (*ECF No. 168). Ms. Swan's second trial on the severed Hobbs Act charges is set for September 10, 2013. *Notice of Hearing* (ECF No. 18).

Mr. Swan's trial will take place in October, 2013 after Ms. Swan's second trial is complete.

On July 31, 2013, Mr. Swan filed a motion requesting permission to contact the jurors from Ms. Swan's first trial and to access the jurors' contact information. *Def. Marshall Swan's Mot. to Clarify* Kepreos *Order and Allow Release of Juror Information* (ECF No. 175) (*Def.'s Mot.*). The Government objected to Mr. Swan's motion and filed a response to his motion on August 1, 2013. *Objection to Def.'s Pretrial Mot. to Clarify* Kepreos *Order and Allow Release of Juror Information* (ECF No. 179) (*Gov't Opp'n*).

## II.  THE PARTIES' POSITIONS

### A.  Marshall Swan's Motion

Mr. Swan argues that he is not subject to the Court's *Kepreos* Order because he did not participate in Ms. Swan's trial and was not her co-defendant. *Def.'s Mot.* at 2-4. He asserts that the Court's Order on his motion for prejudicial joinder, which severed the Swans' trials, demonstrates that Mr. Swan and Ms. Swan are not parties to the same trial. *Id.* at 4. Although in *United States v. Bailey*, 834 F.2d 218 (1st Cir. 1987), the First Circuit declined to define the exact scope of *Kepreos*'s prohibition against post-verdict juror conduct by defendants in related cases, Mr. Swan maintains that "*Kepreos* does not apply to Marshall Swan and his counsel should be permitted to interview jurors from the Carole Swan trial." *Id.* at 2-4. Because he should be able to contact jurors from Ms. Swan's trial, Mr. Swan asserts

3

that the Court should permit the public disclosure of the jurors' names and addresses. *Id.* at 4.

### B. The Government's Opposition

Even though Mr. Swan did not participate in Ms. Swan's trial, the Government asserts that he "is a 'party' in this case." *Gov't's Opp'n* at 2. The Government notes that "[i]t is hard to imag[ine] a co-defendant whose interests are more aligned than [] Marshall's with those of his convicted wife" given that he faces trial on two of the same crimes that were considered by the jury in Ms. Swan's trial. *Id.* at 2-3. Because *Kepreos* prevents post-verdict interviews except in "extraordinary situations" and Mr. Swan has failed to identify an extraordinary need to contact the jurors from Ms. Swan's recent trial, the Government urges the Court to deny his motion. *Id.* at 3.

## III. DISCUSSION

### A. *Kepreos*, *Bailey*, and Marshall Swan's Motion

In *Kepreos*, a mail and investment fraud case against Constantine Kepreos, an Assistant United States Attorney contacted at least one juror following a mistrial without informing the trial court or defense counsel. *Kepreos*, 759 F.2d at 967. Based on his discussions with at least one former jury member, the prosecutor discovered the jury's purported numerical split, the identity of the jurors who were not persuaded beyond a reasonable doubt of the defendant's guilt, and the reasons some jurors were unwilling to convict the defendant in his first trial. *Id.* The Government informed the trial court of its communications with jurors from the

4

first trial four days into the second trial. *Id.* Defense counsel immediately moved to dismiss the case arguing that the Government gained an unfair advantage in the jury-selection process by contacting former jurors. *Id.* The trial judge denied the defendant's motion. *Id.* at 963-64, 967.

On appeal, the First Circuit set forth the general rule that "this Circuit prohibits the post-verdict interview of jurors by counsel, litigants or their agents except under the supervision of the district court, and then only in such extraordinary situations as are deemed appropriate." 759 F.2d at 967. The Court noted that "[p]ermitting the unbridled interviewing of jurors could easily lead to their harassment, to the exploitation of their thought processes, and to diminished confidence in jury verdicts, as well as to unbalanced trial results depending unduly on the relative resources of the parties." *Id.* "Such outcomes, or even the appearance of the same, we are not willing to tolerate."[1] *Id.*

Two years later, in *Bailey*, the First Circuit affirmed *Kepreos*'s rule against post-verdict juror contact but declined to define its scope. 834 F.2d at 220-22. Audrey Bailey was prosecuted for "corruptly endeavoring to influence a juror" in the highly-publicized *United States v. Angiulo* case. *Id.* at 220. Sometime in February 1986 she approached an *Angiulo* juror, Nancy Grant, and stated "Name your price. Name your figure." *Id.* At her own trial on jury tampering, Ms. Bailey asked the trial court for permission to interview *Angiulo* jurors; however, her request was

---

[1] *Kepreos*'s prohibition on post-verdict interviews still stands in the First Circuit. *See United States v. Walsh*, 75 F.3d 1, 7-8 (1st Cir. 1996) (affirming the Court's holding in *Kepreos* because "restrictions on post-verdict contact and the limitations on juror testimony about deliberations . . . exist to protect important interests in the finality of [] verdict[s] and the privacy of the deliberations"); *Dall v. Coffin*, 970 F.2d 964, 971-72 (1st Cir. 1992).

5

denied because the *Angiulo* judge had impounded the jurors' names and addresses. *Id.* at 221.

On appeal, the Government argued that *Kepreos* prevented the defendant from interviewing the *Angiulo* jurors. *Id.* at 222. In response, the First Circuit noted that the language in *Kepreos* forbidding post-verdict interviews of jurors by "'counsel, litigators or their agents'" was "language which, . . . would extend to interviews by lawyers in and parties to the same trial in which the jurors served" but did not expressly cover situations where a defendant wanted to interview former jurors in a trial against an unrelated defendant. *Id.* (quoting *Kepreos*, 759 F.2d at 967). Nevertheless, because Ms. Bailey's trial was "a direct outgrowth" of the *Angiulo* case, the First Circuit stated that "many of the policies underlying the *Kepreos* rule [were] relevant" and therefore the Court "expressly [did] not decide [] the precise scope of the *Kepreos* prohibition." *Id.* at 222 n.4.

Mr. Swan argues that the distinction drawn in *Bailey* renders the *Kepreos* rule against post-verdict interviews inapplicable to him. *Def.'s Mot.* at 3-4. The Court disagrees. Here, unlike *Bailey*, the charges against Mr. Swan are not simply a "direct outgrowth" of Ms. Swan's case; they are the same federal violations, involving the same set of facts and stemming from the same indictment. *See* 834 F.2d at 222 n.4.

Further, similar to *Kepreos*, Mr. Swan's motion raises concerns of unfair advantage regarding the jury selection process as he seeks to interview jurors who have already decided charges against Ms. Swan which are currently pending

6

against him. *See* 759 F.2d at 967. Other policy concerns discussed in *Kepreos*, such as the danger of inconsistent verdicts and juror privacy, are also relevant. *See id.* Given the relationship between the Swans' cases, the Court concludes that Marshall Swan is a party to Carole Swan's case and may not interview jurors from her first trial without establishing that an extraordinary situation exists.

B.   **Extraordinary Situation**

In his motion, Mr. Swan did not alert the Court to "an extraordinary situation" which would warrant post-verdict interviews of Ms. Swan's jurors. Courts in the First Circuit have found "extraordinary situation[s]" exist under *Kepreos* if there was evidence of juror misconduct during a defendant's trial. In *United States v. Dismore*, the Court suggested that evidence that an external source influenced the jury during deliberations would likely qualify as "extraordinary" under *Kepreos.* 115 F. Supp. 2d 23, 26 (D. Me. 2000). By contrast, in *United States v. Crooker*, the Court refused the defendant's request to interview jurors post-verdict on the grounds that they were misled by the prosecutor because there was no evidence of juror misconduct and the defendant's reasons for his request did not outweigh considerations of juror privacy. No. 04-30034-PBS, 2010 U.S. Dist. LEXIS 123638, at *8-9 (D. Mass. Nov. 20, 2010); *see United States v. Meader*, 118 F.3d 876, 878 (1st Cir. 1997) (summarizing the district court's decision to strictly adhere to the *Kepreos* rule when faced with evidence that a juror might have prejudged the case). Here, because Mr. Swan has not informed the Court of an "extraordinary

situation" or need to interview Carole Swan's jurors, the Court denies his motion. *See Kepreos*, 759 F.2d at 967.

C. **Policy Concerns**

If there is a case for trimming *Kepreos*, this is not it. There are a number of sound policy reasons for declining to allow Mr. Swan to contact and interview jurors from his wife's trial. Consistent with *Kepreos*, the Court assured the jurors just before they entered deliberations that they would "never have to explain their verdict to anyone." Contact from counsel for Ms. Swan's husband would lead the jurors to conclude that the Court had given them a false assurance.

Second, Mr. Swan's request would only be the beginning. If the Court allowed Mr. Swan to contact the jurors, there would be no principled basis to deny a similar request from the Government. Thus, the jurors would be faced with the prospect of interviews from at least one of the parties to the Carole Swan litigation. A similar request from Ms. Swan would be sure to follow and it would be difficult to deny Ms. Swan the right to interview jurors from her first trial if the Government had been accorded that right. Thus, the jurors in the Carole Swan case would likely endure three separate interviews from Mr. Swan, the Government and Ms. Swan, all probing their impressions of the evidence, the witnesses, the attorneys, the arguments, and invading their jury deliberations.

Finally, the Court is concerned about juror privacy. To comply with Mr. Swan's request would require the Court to reveal personal contact information about the jurors. The citizens sat through a three-week trial and issued a verdict,

and by doing so, accorded Ms. Swan and the Government a vital constitutional right. Their corresponding right of privacy must be respected and invaded only in an extraordinary situation, not present here.

## IV. CONCLUSION

The Court DENIES Defendant Marshall Swan's Motion for Order to Clarify *Kepreos* Order and Allow Release of Juror Information (ECF No. 175).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 7th day of August, 2013